UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE HUMANE SOCIETY OF THE UNITED STATES**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES POSTAL SERVICE**, <br><br> Defendant. | Civ. No. 07-1233 (CKK) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S "MOTION (1) FOR RECONSIDERATION OF MINUTE ORDER DATED OCTOBER 30, 2007, (2) TO STAY BRIEFING OF PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR SUMMARY JUDGMENT AND (3) TO PROCEED WITH BRIEFING ON DEFENDANT'S DISPOSITIVE MOTION"**

In its latest attempt to unduly complicate this straightforward Administrative Procedure Act case, Defendant has filed a flurry of motions and requests in response to this Court's Minute Order setting forth a briefing schedule on Plaintiff's pending motions to Compel Production of the Administrative Record and for Summary Judgment. Even more troubling, however, is Defendant's apparent view that the mere filing of yet another preliminary motion automatically nullified this Court's Order requiring Defendant to either oppose Plaintiff's Motion to Compel, or produce the Administrative Record on or before November 2, 2007. *See* Minute Order (Oct. 22, 2007). Defendant has also ignored a second Order of this Court, dated October 30, 2007, which mandates a deadline of November 2, 2007 for the filing of Defendant's opposition to Plaintiff's Motion for Summary Judgment – *a date of Defendant's own choosing. See* Def.'s Second Mot. to Enlarge Time (Oct. 29, 2007).

As explained below, Defendant's repeated attempts to frustrate and delay the orderly resolution of this case should not be countenanced by the Court. Cutting through

all the various motions and requests now pending before the Court, the most efficient course of action is for the Court to grant Plaintiff's unopposed Motion to Compel Production of the Administrative Record, and set a schedule for further briefing on Plaintiff's and Defendant's dispositive motions. In this regard, Plaintiff proposes that the Court order that: (1) Defendant produce the Administrative Record and file an opposition to Plaintiff's Motion for Summary Judgment within 15 days; (2) Plaintiff file a combined brief in opposition to Defendant's pending Motion to Dismiss and In the Alternative for Summary Judgment and reply in support of Plaintiff's Motion for Summary Judgment 15 days thereafter; and (3) Defendant file any final reply 7 days thereafter.

The alternative proposed by Defendant is to brief this case three times, rather than once – a duplicative and wasteful approach that hardly serves the interests of the Court or the parties. Accordingly, and since Defendant is in violation of the Court's October 22, 2007 Order, and has not filed any opposition to Plaintiff's Motion to Compel, the Court should deny Defendant's motion in its entirety, treat Plaintiff's Motion to Compel as conceded, order Defendant to timely produce the Administrative Record to the Court and to Plaintiff, and set a schedule for the orderly disposition of this case.

## I.    Defendant May Not Nullify This Court's Orders Simply by Filing a Stay Motion.

Defendant's contempt for proper procedure is reflected not only in its persistent and puzzling refusal to provide the Court with the Administrative Record, but also in its flat disregard of two Orders of this Court. In its October 22, 2007 Order, the Court made clear that if Defendant does not file its opposition to Plaintiff's Motion to Compel on or by November 2, 2007, it must file the Administrative Record on that date. *See* Minute Order (Oct. 22, 2007). November 2, 2007 has come and gone and Defendant has not opposed

Plaintiff's Motion to Compel. Its refusal to file the Administrative Record on that date thus flatly violates this Court's October 22, 2007 Order.

Defendant apparently thinks it can unilaterally suspend an Order of this court – and delay briefing of Plaintiff's Motion to Compel indefinitely – simply by filing a stay motion two days before the deadline established by that Order. In *American Rivers v. U.S. Army Corps of Engineers*, Judge Kessler condemned a similar tactic as "Nonsense," and held that "[m]oving to stay an order does not represent a good faith effort to comply with that order; rather, it represents an effort to *postpone* compliance." 274 F. Supp. 2d 62, 68 (D.D.C. 2003) (emphasis in original); *see also id.* (denouncing agency's ploy as "exact opposite" of "good faith"); *Land v. Dollar*, 190 F.2d 366, 379 (D.C. Cir. 1951) (government agency may not disregard court order despite its "belie[f] that [it] can eventually in some other proceeding have the decree set aside"). If every court Order could be deprived of effect by the mere filing of a stay motion, the Court's ability to maintain control over its docket would be substantially impaired. Defendant is not free to "mak[e] [it]sel[f] judge[ ] of the validity of the decree issued by the court" and delay resolution of Plaintiff's Motion to Compel indefinitely by withholding its brief in opposition. *Land*, 190 F.2d at 379.

Since it is not clear when, if ever, Defendant intends to brief Plaintiff's Motion to Compel, the Court should exercise its authority under Local Rule 7(b) and treat the Motion to Compel as conceded. Local Civ. R. 7(b) (where a memorandum in opposition to a motion "is not filed within the prescribed time, the Court may treat the motion as conceded"); *see also F.D.I.C. v. Bender*, 127 F.3d 58, 67 (D.C. Cir. 1997) (discretion to treat a motion as conceded for failure to timely file an opposition "lies wholly with the district court"); *Twelve John Does v. Dist. of Columbia,* 117 F.3d 571, 577 (D.C. Cir. 1997) ("Where the district

court relies on the absence of a response as a basis for treating [a] motion as conceded, we honor its enforcement of Local Rule 7(b)").

Defendant has also ignored this Court's Order establishing a deadline of November 2, 2007 for it to file a response to Plaintiff's Motion for Summary Judgment – even though *that date was of Defendant's own choosing*, and Defendant obtained Plaintiff's consent to file its brief on that date. *See* Minute Order (Oct. 30, 2007); Def.'s Second Mot. to Enlarge Time (Oct. 29, 2007). Under Local Rule 7(b) the Court may likewise treat Plaintiff's summary judgment motion as conceded. *See also* Local Civ. R. 7(h) (in summary judgment proceedings, "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

Contrary to Defendant's erroneous and self-serving statement that "Plaintiff has not argued that resolution of its dispositive motion is time-sensitive," Def.'s Mem. In Supp. Of Mot. for Reconsideration at 7-8 (Oct. 31, 2007) ("Def.'s Mem."), the protracted delay caused by Defendant's tactic is highly prejudicial to Plaintiff. As Plaintiff stated in its Motion to Compel, "the illegal trafficking of hundreds if not thousands of fighting animals advertised in the Publications at issue here continues unabated." Pl.'s Mot. To Compel at 3. Indeed, just five days after Plaintiff filed its Motion to Compel, law enforcement authorities in California seized copies of the Publications at issue in this case as evidence at yet another animal fighting raid – the largest in U.S. history. *See* Debi Farr Baker, *More than 5,000 birds seized in cockfighting raid,* SAN DIEGO UNION-TRIBUNE (Ex. A). Plaintiff dispatched its Disaster Relief team and veterinary staff from several states to provide critical assistance with the handling of over 5,000 fighting animals seized during the raid. *See id.*

(quoting Plaintiff's officer).[1] Defendant's failure to abide by multiple Court-ordered deadlines is no idle concern. The Court should therefore order Defendant to produce the Administrative Record and set a schedule for prompt briefing of the pending dispositive motions.

## II.    The Briefing Sequence Embodied in the Minute Order Is Proper.

Defendant's Motion for Reconsideration of the Court's October 30, 2007 Minute Order falls far short of the showing necessary to overrule an interlocutory order. In this Circuit, the "Court generally will grant a motion for reconsideration only when the movant demonstrates (1) an intervening change in law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003); *see also Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (permitting reconsideration "as justice requires"). Defendant fails to explain how "justice requires" disturbing the Court's Minute Order.[2]

The motion identifies no "[in]justice" or harm that will befall Defendant if its motion is denied. Nor did the Court commit a "clear error of law in the first order" in issuing the Minute Order. *Keystone*, 217 F.R.D. at 237. That Order simply establishes a briefing schedule in the most equitable manner given Defendant's persistent refusal to disclose the Administrative Record. Scheduling orders are well within the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort

---

[1] Plaintiff's Disaster Relief team is still out in the field and has been unable to submit its financial expenditures and staffing hours for this raid. Plaintiff will file this documentation with its Reply brief in support of its Motion for Summary Judgment.

[2] The three Motions contained in Defendant's October 31, 2007 filing are not separately briefed within that filing and are not logically or legally distinct from one another. Since resolution of Defendant's Motion "To Proceed With Briefing on Defendant's Dispositive Motion" and its Motion "To Stay Briefing of Plaintiff's Motion to Compel" depend upon resolution of Defendant's Motion for Reconsideration of the October 31, 2007 Minute Order, Plaintiff's will address all three motions in this section.

for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936).

It is not only *proper* for the Court to rule on Plaintiff's Motion to Compel prior to resolving the parties' dispositive motions – binding precedent and the APA itself *require* it. As explained in Plaintiff's Motion to Compel, the APA provides, without qualification, that the reviewing court "shall review the whole record" before "decid[ing] *all* relevant questions of law," and before "interpret[ing] . . . statutory provisions." 5 U.S.C. § 706 (emphasis added). Plaintiff now has a Motion for Summary Judgment pending that asks the Court to "decide [ ] relevant questions of law" and "interpret . . . statutory provisions" – a motion that Plaintiff filed *before* Defendant filed its dispositive motion. *See id.*; *see also Fair Employment Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1275 n.2 (D.C. Cir. 1994) (when a court "confronts a Rule 56 motion for summary judgment, '[i]t will not do to presume the missing facts'") (quoting *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990)).

Defendant cites no authority for the proposition that the mere lodging of a jurisdictional dismissal argument automatically negates the agency's statutory obligation to produce the Administrative Record to the Court. Rather, the precedent cited by Defendant supports Plaintiff's position. In *Biodiversity Legal Foundation v. Norton*, the defendant agency attempted to evade production of the Administrative Record on the same theory used by Defendant here – namely, that "there is no final agency action in this case," or in the alternative that the agency's action "is not reviewable." 180 F. Supp. 2d 7, 11 (D.D.C. 2001). The Court granted the plaintiff's motion to compel production of the Administrative Record notwithstanding the agency's jurisdictional arguments, which it did not resolve at that time. *See id.*; *see also Am. Bioscience Inc. v. Thompson,* 243 F.3d 579,

6

582 (D.C. Cir. 2001) (trial court must "require[ ] the [agency] to file the administrative record" prior to judicial review in an APA action, even before resolving a dismissal motion).[3] Thus, the authority cited by Defendant in its dispositive motion only proves Plaintiff's point. *See Sunshine Pub. Co. v. Summerfield*, 184 F. Supp. 767, 770-72 (D.D.C. 1960) (undertaking review of a similar Postal Service decision with the benefit of a "full review of the record," and quoting from Postal Service documents that detailed the agency's decision-making process); *see also Aimes Publications, Inc. v. U.S. Postal Serv.*, 1988 WL 19618, at *5 n.10 (D.D.C. Feb. 23, 1988) ("[r]eview by the courts" of Postal Service's "mailability" determination is governed by "an analysis of the administrative record") (citing *National Rifle Ass'n v. U.S. Postal Serv.,* 407 F. Supp. 88 (D.D.C. 1976)).[4]

Here, it is especially clear that Defendant's refusal to produce the Administrative Record impairs the Court's ability to resolve Defendant's jurisdictional arguments, since those arguments rely on Defendant's descriptions of its own ruling as mere "routine[ ] . . . advice," or a document that arises in the "ordinary course of business," or that contains "tentative conclusions." Daniel Decl. at 12; Def.'s Mot. To Dismiss or In the Alternative For

---

[3] Defendant's reliance on *Currier v. Potter*, 379 F.3d 716 (9th Cir. 2005) for the proposition that the APA does not apply here is misplaced. In *Currier*, the plaintiffs sought an order compelling the Postal Service to provide free mail boxes to a group of homeless people – an action the Court found to be precluded from APA review. *See id.* at 723-24. Here, on the other hand, the agency action giving rise to Plaintiff's claim – a mailability determination – falls within an express statutory exception to the APA exemption the Postal Service otherwise enjoys. 39 U.S.C. § 3001(m) (providing that "proceedings concerning the mailability of matter under this chapter . . . shall be conducted in accordance with chapters 5 and 7 of title 5 [of the U.S. Code; the APA]"); *see also Aimes*, 1988 WL 19618, at *5 n.10 ("[w]hile the Postal Service is generally exempt from the provisions of the [APA], . . . the APA specifically applies to proceedings concerning the mailability of matter").

[4] Defendant's reliance upon the APA and Local Rule 7(n) is also baffling, as those provisions undermine Defendant's position. Without access to the Administrative Record, it is not possible for the parties to "cite[ ] or otherwise rel[y] upon" the Record. Local Civ. R. 7(n); *see also* 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party") (quoted in Def.'s Mem. at 4).

Summ. J. at 33. Before dismissing on the basis of these self-serving characterizations of what the agency did or did not do or consider during its "decisionmaking process," Def.'s Mot. To Dismiss or In the Alternative For Summ. J. at 32, Plaintiff is entitled to test, and the Court is entitled to scrutinize, those characterizations, as well as the Record that comprises that process. 5 U.S.C. § 706; *see also Boswell Memorial Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C. Cir. 1984) (quoting APA legislative history and holding that "[t]he requirement of review upon 'the whole record' means that courts may not look only to the case presented by one party, since other evidence may weaken or even indisputably destroy that case") (citations omitted).

Defendant's refusal to divulge the Administrative Record is especially perplexing in light of the fact that it has already managed to file with the Court *hundreds of pages of material that did not even exist* at the time of the June 26, 2007 agency action under review. *See* Def.'s Mot. To Dismiss or in the Alternative for Summ. J., Ex. F, G, J, K (materials that were published in July, August, and September, 2007). Thus, even if the Court does ultimately rule for Defendant on jurisdictional grounds, having the Administrative Record available to the Court while it decides whether to do so (or whether, for instance, to base its ruling on the merits of Plaintiff's claim or on Defendant's own self-described "merits-based argument," *see* Def.'s Mem. at 3) in no way prejudices Defendant.

Finally, Defendant's preferred briefing sequence also runs counter to the Court's interests in judicial economy. It is much more efficient for the Court to have all dispositive arguments before it at once, so that it can issue a single dispositive ruling on whichever basis it chooses, rather than the piecemeal approach suggested by Defendant. *See, e.g.,* Def.'s Mem. at 6 (suggesting that the Court entertain, after resolving Defendant's pending summary judgment motion, unspecified further rounds of briefing on "any additional merits–based arguments that Defendant may have").

**Conclusion**

For the foregoing reasons, the Court should issue an Order: (1) denying Defendant's October 31, 2007 Motion in its entirety; (2) deeming Plaintiff's Motion to Compel conceded; (3) compelling Defendant to produce the Administrative Record and file its opposition to Plaintiff's Motion for Summary Judgment within 15 days; (4) setting a deadline for Plaintiff to file its brief in opposition to Defendant's pending Motion to Dismiss and In the Alternative for Summary Judgment, and reply in support of Plaintiff's Motion for Summary Judgment 15 days thereafter; and (5) setting a deadline for Defendant to file any final reply 7 days thereafter.

Respectfully submitted,

__/s/_____
Ethan Carson Eddy (D.C. Bar No. 496406)
Rebecca G. Judd (D.C. Bar No. 486315)
Jonathan R. Lovvorn (D.C. Bar No. 461163)

THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street, N.W.
Washington, D.C. 20037
(202) 676-2329
(202) 778-6132 (fax)
eeddy@hsus.org

*Counsel for Plaintiff*

Stuart Philip Ross (D.C. Bar No. 031658)
Sarhana Livingston (D.C. Bar No. 975886)
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C. 20006
(202) 662-2000

November 9, 2007                    *Of Counsel for Plaintiff*

Exhibit A to Plaintiff's Opposition to Defendant's
"Motion (1) for Reconsideration of Minute Order Dated
October 30, 2007, (2) to Stay Briefing of Plaintiff's
Motion to Compel and Motion for Summary Judgment
and (3) to Proceed With Briefing on Defendant's
Dispositive Motion"

*The Humane Society of the United States v.*
*United States Postal Service*

Civ. No. 07-1233 (CKK)

Case 1:07-cv-01233-LFO   Document 23-2   Filed 11/09/2007   Page 2 of 2



**SignOnSanDiego.com**
THE SAN DIEGO UNION-TRIBUNE

**PRINT THIS**

**More Metro news**

# More than 5,000 birds seized in cockfighting raid

**By Debbi Farr Baker**
UNION-TRIBUNE BREAKING NEWS TEAM

**12:58 p.m. October 15, 2007**

SAN DIEGO — More than 5,000 birds were seized and 50 people were arrested in what's being called the largest cockfighting raid in U.S. history, authorities announced Monday.

Several law enforcement agencies took part in a raid that was carried out in several locations Saturday in South County, said San Diego District Attorney Bonnie Dumanis.

The largest of the raids was at a 7-acre compound in Otay Mesa near the border, where 4,400 birds including roosters, hens and chicks were found.

"For years this particular site has been a bird factory — raising and training hundreds of roosters for illegal cockfighting," Dumanis said. "Many of the birds had been maimed and tortured in the name of sport."

Those arrested were charged with misdemeanors and released. They face up to one year in jail and a $5,000 fine. About five of those arrested are members of the U.S. military, Dumanis said. An additional 50 people are still being sought.

Dozens of boxes of fighting implements, including hundreds of knives, were also seized as well as cockfighting videos, medical supplies, scales, computers, photos of people with their birds and several underground cockfighting publications said, Eric Sakach, West Coast director of the Humane Society of the United States.

Sakach described the fights as a "bloody blurry blur of feathers" that mutilates the birds and reduces them to "chunks of lacerated meat."

He said the raids were a major setback for the purveyors of the bloody sport throughout the country.

The six-month investigation was led by the County of San Diego Department of Animal Services, said department director Dawn Danielson. She said many of the birds that were seized have already been euthanized.

■ Debbi Baker: (619) 293-1710; **debbi.baker@uniontrib.com**

**Find this article at:**
http://www.signonsandiego.com/news/metro/20071015-1258-bn15fight.html

Check the box to include the list of links referenced in the article.

© Copyright 2007 Union-Tribune Publishing Co. ? A Copley Newspaper Site