**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE HUMANE SOCIETY OF THE            )
OF THE UNITED STATES,                )
                                     )
                                     )
            Plaintiff,               )
                                     )
      v.                             )      Civil Action No. 07-1233 (JR)
                                     )
UNITED STATES POSTAL SERVICE,        )
                                     )
            Defendant.               )
_____)


**MEMORANDUM OPINION**

          The Animal Welfare Act, 7 U.S.C. § 2156, makes it

unlawful to use the United States mail to advertise an animal or

certain sharp instruments for use in "animal fighting ventures."

The Postal Reorganization Act renders mail that is punishable

under the Animal Welfare Act "nonmailable."  39 U.S.C. § 3001.

Invoking those statutes, the Humane Society of the United States

petitioned the United States Postal Service ("USPS") to declare

nonmailable a monthly periodical entitled *The Feathered Warrior*.

The Humane Society sought judicial review of  USPS's denial of

that petition, asserting that the denial was arbitrary,

capricious, an abuse of discretion, or otherwise not in

accordance with the law.  See 5 U.S.C. § 706(2)(A).

          In an order issued March 27, 2009 [dkt # 44], I denied

without prejudice both the Humane Society's motion for summary

judgment [dkt # 26] and USPS's cross-motion to dismiss or for

summary judgment [dkt # 27], remanded the matter to the Postal
Service for further consideration, and stayed proceedings in this
court.  The reasons for that order are set forth in this
memorandum.

### *Facts*

USPS delivers *The Feathered Warrior* to a few thousand
subscribers every month,[1] charging a discounted periodical rate
for postage.  About two-thirds of the magazine's content is
advertisements.  The Humane Society alleges that more than ninety
percent of the ads are criminal solicitations for the sale of
fighting animals and weapons whose purchase is illegal under
federal law and the laws of many states.  There are also ads for
the sale of cockfighting supplies, illegal steroids, and animal
fighting venues (*i.e.*, cockfighting clubs) in states where
cockfighting is illegal; ads for illegal animal fights; and
listings of champions in recent cockfights.  Publications like
*The Feathered Warrior* are recovered in seventy-five percent or
more of law enforcement raids of illegal animal fights and are
offered in evidence to prove criminal culpability.

The Humane Society is often called upon by law
enforcement to provide care and shelter for fighting animals
seized in raids of animal fighting ventures, and it expects that

---

[1]The Humane Society's complaint originally addressed both
*The Feathered Warrior* and *The Gamecock*, but settlement was
reached in another case with regard to *The Gamecock* [dkt # 34].

the calls for such service will continue.  The costs to the
Humane Society, for the equipment, transportation, veterinary
supplies, and personnel needed to respond to such calls, usually
on an emergency basis and without prior notice, run to hundreds
of thousands of dollars.

The Humane Society alleges that USPS's continuing
willingness to deliver *The Feathered Warrior* violates the Postal
Reorganization Act's requirement that material in violation of
the Animal Welfare Act be declared nonmailable.  The Humane
Society also asserts that the circulation of *The Feathered
Warrior* violates USPS's own Domestic Mail Manual ("DMM").

The Animal Welfare Act states in relevant part that:

(c) . . . It shall be unlawful for any person
to knowingly use the mail service of the
United States Postal Service or any
instrumentality of interstate commerce for
commercial speech for purposes of advertising
an animal, or an instrument described in
subsection (e), for use in an animal fighting
venture, promoting or in any other manner
furthering an animal fighting venture except
as performed outside the limits of the States
of the United States.

(d) . . . Notwithstanding the provisions of
subsection (c) of this section, the
activities prohibited by such subsection
shall be unlawful with respect to fighting
ventures involving live birds only if the
fight is to take place in a State where it
would be in violation of the laws thereof.

(e) . . . It shall be unlawful for any person
to knowingly sell, buy, transport, or deliver
in interstate or foreign commerce a knife, a
gaff, or any other sharp instrument attached,

-3-

or designed or intended to be attached, to
the leg of a bird for use in an animal
fighting venture.

7 U.S.C. § 2156 (as amended on June 18, 2008).[2]  The language of

the DMM closely tracks the language of the Animal Welfare act.[3]

The Postal Reorganization Act makes "[m]atter the

deposit of which in the mails is punishable under . . . section

26 of the Animal Welfare Act <u>nonmailable</u>."  39 U.S.C. § 3001(a)

(emphasis added).

On April 26, 2006, the Humane Society petitioned USPS

with the request that *The Feathered Warrior* be declared

nonmailable and that its periodical mailing privileges be

revoked.  By letter dated June 5, 2006, USPS declined to take the

requested action, asserting that under the Animal Welfare Act and

the DMM, "bird fighting magazines are generally mailable;

however, advertisements of bird fights are nonmailable if the

fights are to take place in states that have outlawed the

practice."

---

[2] Prior to June 18, 2008, subsection (c) made it unlawful
for any person to "knowingly use the mail service of the United
States Postal Service or any instrumentality of interstate
commerce for commercial speech for purposes of promoting or in
any other manner furthering an animal fighting venture except as
performed outside the limits of the States of the United States."

[3] Section 601.12.5.7 of the DMM states that "[w]ritten,
printed, or graphic matter (e.g., advertisements or other
commercial speech) promoting or furthering an animal fighting
venture conducted in any state (except a venture involving live
birds permitted under the laws of the state in which the fight is
conducted) is nonmailable under 7 USC 2156."

On May 3, 2007, the Animal Welfare Act was amended to expressly bar the mailing of "commercial speech for purposes of promoting or in any other manner furthering an animal fighting venture." 7 U.S.C. § 2156. On that same day, the Humane Society requested that USPS reconsider its prior decision regarding the mailability of *The Feathered Warrior*. On June 26, 2007, USPS again denied the Humane Society's request, declaring that the amendment to the Animal Welfare Act "did not alter its direct application to the Postal Service."

USPS's position in response to the Humane Society's suit is that its responses to the Humane Society's mailings were not final agency action or the result of judicially reviewable "proceedings"; that indeed USPS has no "proceedings" about mailability that can be initiated by anyone but a mailer unless they concern lottery matter, false advertising matter, or articles and substances, <u>see</u> 39 C.F.R. Parts 952-953; and that § 3001(m) of the Postal Reorganization Act, which provides that "proceedings concerning the mailability of matter . . . shall be conducted in accordance with chapters 5 and 7 of title 5" (the Administrative Procedure Act), has no application to the Humane Society's petition or to USPS's rejection of that petition.

On June 18, 2008, after this suit was filed, § 2156 was amended again, inserting an express ban on mailing "advertising"

materials for fighting animals and cockfighting weapons.   7
U.S.C. § 2156.

### *Analysis*

### 1. <u>Standing</u>

A plaintiff bringing a claim of unlawful government
action must satisfy all three of the Article III standing
requirements:  (1) injury-in-fact; (2) causation; and
(3) redressability.  <u>Renal Physicians Ass'n v. U.S. Dep't of
Health and Human Servs.</u>, 489 F.3d 1267, 1272 (D.C. Cir. 2007)
(citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61
(1992)).  An organizational plaintiff may assert either
organizational standing, *i.e.*, standing in its own right, or
representational standing, *i.e.*, standing on behalf of its
members.

Here, alleging financial injury and a need to shift
programming and organizational resources, the Humane Society
asserts organizational standing.  <u>See Brady Campaign to Prevent
Gun Violence United with the Million Mom March v. Ashcroft</u>, 339
F. Supp. 2d 68, 73 (D.D.C. 2004) (citing <u>Hunt v. Wash. State
Apple Adver. Comm'n</u>, 432 U.S. 333, 342-43 (1977)).  USPS disputes
the claim of organizational standing, asserting that the Humane
Society has not been injured, that its expenditures cannot be
traced to the actions of USPS, and that an order forcing USPS to
declare *The Feathered Warrior* nonmailable would not decrease

illegal animal fights or the number of law enforcement raids on such fights.  In evaluating this dispute, I must "assume the merits in favor of the party invoking . . . jurisdiction." Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury, 545 F.3d 4, 10 (D.C. Cir. 2008).

A. Injury

Injury-in-fact is "an invasion of a legally protected interest that is (I) concrete and particularized rather than abstract or generalized, and (ii) actual or imminent rather than remote, speculative, conjectural or hypothetical."  In re Navy Chaplaincy, 534 F.3d 756, 759-60 (D.C. Cir. 2008) (internal quotations omitted).

USPS does not dispute the Humane Society's claim that answering law enforcement requests for assistance to animals seized from illegal fights costs hundreds of thousands of dollars.  It argues instead that those expenses invade no legally protected interest of the Humane Society because the Humane Society is a volunteer - that the fact that the Humane Society *chooses* to try and eliminate illegal animal fights makes the related expenditures a self-inflicted wound insufficient to establish injury-in-fact.  Additionally, USPS argues that there is no actual or imminent harm because the Humane Society cannot identify any future raids in which the Humane Society will be called in to assist.

-7-

The Humane Society has spent decades trying to reduce illegal animal fighting in the United States.  Its decision to dedicate time and resources to achieving this goal may be a voluntary budgetary decision, but if the need to care for animals on an emergency basis is increased by USPS's circulation of *The Feathered Warrior*, then the financial injury to the Humane Society is neither voluntary nor self-inflicted.  See Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79 (1982) (if discriminatory actions taken by the defendants have "perceptibly impaired" the plaintiff's programs, "there can be no question that the organization has suffered injury in fact"); see also Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129, 133 (D.C. Cir. 2006) (citing cases that have found organizational standing under Havens); Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp., 28 F.3d 1268, 1276-77 (D.C. Cir. 1994) (an organization's own budgetary choices, independent of the defendant's actions, is not a recognizable injury-in-fact).

The fact that the Humane Society cannot name the exact date and location of the next raid of an illegal animal fight does not affect its standing.  See Emergency Coal. to Defend Educ. Travel, 545 F.3d 4, 9-10 (noting that "some day" intentions do not create an actual or imminent injury, but events that occur

consistently are more concrete and specific and can serve as the basis for injury-in-fact).

      B. <u>Causation and redressability</u>

      To establish the causation element of standing, a plaintiff must demonstrate that its injury is "fairly traceable" to the defendant's actions, "as opposed to the independent action of a third party not before the court." <u>America's Cmty. Bankers v. F.D.I.C.</u>, 200 F.3d 822, 827 (D.C. Cir. 2000).  To establish redressability, a plaintiff must establish that it is "likely, as opposed to merely speculative, that a favorable decision by this court will redress the injury suffered." <u>Id.</u>

      USPS argues that its distribution of *The Feathered Warrior* is not a substantial factor in the decision of animal fighting enthusiasts to engage in illegal animal fights, and that the Humane Society's injury is therefore not fairly traceable to USPS's decision on the mailability of *The Feathered Warrior*.  The Humane Society argues, on the other hand, that causation and redressability exist because the circulation of *The Feathered Warrior* promotes animal fights and therefore likely increases the number of animals injured in illegal animal fights.

      Standing to challenge government conduct that allegedly causes a third party to injure the plaintiff can exist <u>either</u> "where the challenged government action authorized conduct that would otherwise have been illegal," <u>or</u> "where the record

presented substantial evidence of a causal relationship between
the government policy and the third-party conduct, leaving little
doubt as to causation and the likelihood of redress." Renal
Physicians Ass'n, 489 F.3d at 1275 (internal quotations omitted).
The Humane Society arguably meets both tests.  Under the first
one, the Humane Society challenges government action that
authorizes what it alleges is the illegal acceptance of mail
matter.  Under the second, the record does present "substantial
evidence of a causal relationship" between the continued mailing
of *The Feathered Warrior* and illegal animal fighting, including a
declaration by Ann Chynoweth, the Senior Director of the Animal
Cruelty and Fighting campaign for the Humane Society [dkt # 26-
2].  Chynoweth states that the distribution of *The Feathered
Warrior* promotes and furthers illegal animal fighting ventures in
at least five ways: (1) it advertises animal fights, (2) specific
animal fighting ventures would not exist without the publication
because it would be more difficult to procure animals and
supplies for the fights, (3) it advertises birds that won at past
fights and therefore encourages attendance at particular fights,
(4) it advertises fighting animals, and (5) it publishes fight
results from particular venues [dkt #26-2 ¶¶ 31-38].  The Humane
Society also points to an academic study examining the market
forces of cockfighting [dkt #29-3].  See Donna K. Darden &
Steven K. Worden, Marketing Deviance: The Selling of

Cockfighting, 4 Journal of Human-Animal Studies 211, 228 (1996).
In that study, the authors state that "[t]he major third party
intermediary or facilitator in the marketing of fighting chickens
is the magazine." Id. Although the article also states that
"[w]ord-of-mouth is still the most effective means of advertising
and promoting in all forms of marketing," the article notes that
in the world of cockfighting, magazines such as *The Feathered
Warrior* are the only intermediary or facilitator of product
sales. Id.

C. Prudential standing

In addition to the constitutional standing
requirements, a plaintiff must also satisfy prudential standing
requirements. Bennett v. Spear, 520 U.S. 154, 162 (1997);
Emergency Coal. to Defend Educ. Travel, 545 F.3d at *11. The
Humane Society can establish prudential standing if its injury is
within the zone-of-interests protected or regulated by the Animal
Welfare Act. See Emergency Coal. to Defend Educ. Travel, 545
F.3d at *11 (discussing prudential standing under the APA). The
Humane Society does not need to show that the congressional
purpose of the Animal Welfare Act was to benefit the Humane
Society, see Animal Legal Defense Fund, 154 F.3d at 444, but must
show only that its injury is arguably within the protected zone-
of-interests. See Muir v. Navy Fed. Credit Union, 529 F.3d 1100,
1106-07 (D.C. Cir. 2008).

Congress enacted § 2156 of the Animal Welfare Act, and has repeatedly amended it over the years, to assure the humane treatment of animals and to protect animals from being abused in illegal animal fights.  See 7 U.S.C. § 2131.  The Humane Society's reason for existence is to protect animals, and, as indicated in its declarations to this court and at oral argument, it has dedicated time and resources for over fifty years to eliminate or reduce the number of illegal animal fights.  See Chynoweth Declaration [dkt #26-2 ¶ 2].  Its grievance is well within the zone-of-interests protected or regulated by the Animal Welfare Act.  See Animal Welfare Inst. v. Kreps, 561 F.2d 1002, 1007 (D.C. Cir. 1977) ("Where an act is expressly motivated by considerations of humaneness toward animals, who are uniquely incapable of defending their own interests in court, it strikes us as eminently logical to allow groups specifically concerned with animal welfare to invoke the aid of the courts in enforcing the statute.").

## 2. **APA Review**

Agency action is generally subject to judicial review under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, if it is final, Bennett v. Spear, 520 U.S. 154, 177-78 (1997), and if the party seeking judicial review is aggrieved by the action.  5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); Air Courier Conference of America v. American Postal Workers Union, AFL-CIO, 498 U.S. 517, 524 (1991).  If a statute specifically precludes judicial review, however, or the agency action is committed to agency discretion by law, then there can be no judicial review.  5 U.S.C. § 701(a).

USPS argues that its letters responding to the Humane Society's petition and request for reconsideration were not final agency action, and that, even if they were, they are not subject to judicial review because the Humane Society is not a proper plaintiff and because, with exceptions not applicable here, USPS is exempt from the judicial review provisions of the APA.

A. Final agency action

For an agency action to be "final," it must "mark the consummation of the agency's decisionmaking process," and be an action "by which rights or obligations have been determined, or from which legal consequences will flow."  Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (internal quotations omitted).

USPS's suggestion that its letters to the Humane Society did not unequivocally state the agency's position regarding the mailability of The Feathered Warrior does not withstand even casual scrutiny.  Its June 5, 2006 response to the Humane Society's petition states:

-13-

> We appreciate your concern and thank you for
> bringing these matters to our attention.
> However, we cannot take the requested actions
> at this time. . . .We interpret our mailing
> standards to mean that bird fighting
> magazines are generally mailable; however,
> advertisements of bird fights are nonmailable
> if the fights are to take place in states
> that have outlawed the practice.  Based on
> this interpretation, we cannot identify
> nonmailable advertising in the []
> publications that you sent to us. . . . If
> you can point to another authority that would
> suggest alternative interpretations of the
> AWA statute that gave rise to our mailing
> standards, we will reconsider our
> conclusions.

And its June 26, 2007 response to the Humane Society's request
for reconsideration in light of recent amendments to the Animal
Welfare Act states:

> Although the Act did clarify the scope of 7
> U.S.C. § 2156(c) as including all
> instrumentalities "of interstate commerce for
> commercial speech", because the Act did not

alter its direct application to the Postal
Service, I do not believe this change affects
my previous interpretation.  The absence of
any change to the plain language of the
statute which addresses the Postal Service
prevents me from adopting contrary intentions
expressed within the Act's legislative
history.

Likewise, the Act's addition of a provision
criminalizing the sale, purchase, transport,
or delivery in interstate or foreign commerce
of bird-fighting accessories did not include
among its prohibitions any ban on advertising
of such items.  7 U.S.C. § 2156(e).
Therefore, the mailability of these
magazines, which appear to contain such
advertisements, remains unchanged.

Both letters unequivocally recite USPS's determination that *The
Feathered Warrior* was mailable.  Neither suggests that USPS would
engage in further consideration of the issue without a change of
circumstances.  See Ciba-Geigy Corp. v. U.S. Environmental
Protection Agency, 801 F.2d 430, 435-36 (D.C. Cir. 1986) (letter
from the EPA was final agency action because it "unequivocally

stated EPA's position" and did not indicate that the decision was subject to further agency consideration or could be modified).

USPS also argues that its response to the Humane Society's petition was not a final agency action because it did not impose an obligation on the Humane Society, nor did it deny the Humane Society any rights or fix any legal relationships. Although the agency action did not require the Humane Society to take any particular subsequent action, the mailability determination was a denial of the Humane Society's petition and it affected the legal status of *The Feathered Warrior* as mailable material, it was therefore a final agency action.  See <u>John Doe, Inc. v. Drug Enforcement Admin.</u>, 484 F.3d 561, 566 (D.C. Cir. 2007) (the DEA's affirmative denial of Doe's permit application was final agency action).

B. <u>Aggrieved party</u>

Whether a plaintiff challenging agency action is aggrieved by that action is closely related to, and in this case indistinguishable from, the issue of standing.  A plaintiff must show that it has suffered injury-in-fact and that it falls within the zone-of-interests intended to be protected by the governing statute.  <u>Air Courier Conference of America v. American Postal Workers Union, AFL-CIO</u>, 498 U.S. 517, 524 (1991).  As discussed above, the Humane Society has met the constitutional requirements

for standing and is therefore an aggrieved party entitled to challenge USPS's mailability determination in this case.

      C. Reviewability

      USPS has been broadly exempted from judicial review under the APA.  39 U.S.C. § 410(a).  There are exceptions, however, and one of them is "proceedings concerning the mailability of matter."  Such "proceedings . . . shall be conducted in accordance with chapters 5 and 7 of title 5," 39 U.S.C. § 3001(m) - that is, in accordance with the Administrative Procedures Act, which, of course, does provide for judicial review.

      In the submission of USPS, its mailability determination as to *The Feathered Warrior* is not judicially reviewable in a suit brought by the Humane Society.  Its litigation position is that the Humane Society's petition and request for reconsideration, and its own two letter responses, were not "proceedings" within the meaning of the § 3001(m) exception; that no such "proceedings" have been established for third-party challenges to mailability; and indeed that there is no way for a nonmailer to initiate proceedings to challenge a mailability determination, even if the determination is a final agency action and even if the nonmailer is aggrieved.  To reach this position, USPS contends that the word "proceedings" in § 3001(m) is limited to *formal* proceedings, and contends further

-17-

that such proceedings can be initiated only by a mailer, and only to challenge a USPS determination of nonmailability.

The necessary question that arises, when confronted by that USPS submission in this litigation, is whether the court owes Chevron deference to it.  That question has two sub-parts: First, is the meaning of the word "proceedings" clear, within the plain language of § 3001(m)?  See Verizon Cal., Inc. v. F.C.C., 555 F.3d 270, 273 (D.C. Cir. 2009) ("Under the familiar Chevron framework, we defer to the FCC's reasonable interpretation so long as it doesn't contradict the Act's unambiguous text.  Of course, as with all agency actions subject to the Administrative Procedure Act, the interpretation also must not be arbitrary and capricious." (internal citation omitted)).  Second, if the word is ambiguous, has USPS interpreted it; and, if so, is the interpretation reasonable?  See City of Anaheim, Cal. v. F.E.R.C., No. 08-1021, 2009 WL 483172, at *1 (D.C. Cir. 2009) (agencies must comply with applicable statutes; Chevron deference is owed "to an agency's *authoritative* and *reasonable* interpretation of an *ambiguous* statutory provision" (emphasis added)).

One thing about § 3001(m) is clear:  Under the plain language of that section, if USPS conducts a proceeding concerning the mailability of material, the proceeding is subject to judicial review under the APA.  39 U.S.C. § 3001(m).  The

-18-

section does not define the term "proceedings," however, and
there is nothing in the statute that provides guidance as to the
meaning of the word.  <u>See</u> 39 U.S.C. § 102 (providing definitions
for words used in this title, but none for the word
"proceedings").  Thus, whether the section was intended to
trigger judicial review *only* if a mailer challenged a mailability
determination made by USPS after a formal adjudication, or
whether instead, a nonmailer can seek judicial review of USPS's
unfavorable response to a petition asking USPS to declare
material nonmailable, is unclear.  Accordingly, the meaning of
the word "proceedings" in § 3001(m) is ambiguous.

The next issue is whether USPS made an authoritative
interpretation of the word "proceedings" before this case was
initiated, or whether, instead, the interpretation advanced here
is merely a *post hoc* litigation strategy.  USPS has not pointed
to any agency decisions made prior to this litigation with regard
to the meaning or application of § 3001(m).  The only information
available for consideration, therefore, is USPS's conduct prior
to this lawsuit and the position asserted by USPS counsel in the
course of this litigation.

Before this lawsuit was filed, USPS received the Humane
Society's petition, apparently considered it on its merits,
reached a conclusion on the merits explaining its reasons, and
gave no indication that there were no available "proceedings" for

dealing with the mailability question the Humane Society
presented.  The position USPS takes today was not articulated, or
even hinted at, until USPS filed its response to the Humane
Society's suit for judicial review.  See Bowen v. Georgetown
Univ. Hosp., 488 U.S. 204, 212 (1988) (declining to provide
deference to "agency litigation positions that are wholly
unsupported by regulations, rulings, or administrative
practice"); Black's Law Dictionary (8th ed. 2004) (defining
"proceedings" as "[a]ny procedural means for seeking redress from
a tribunal or agency").  Because USPS's only articulated
interpretation of the word "proceedings" is a *post hoc*
rationalization offered by USPS's counsel after this litigation
began, it is not owed Chevron deference.  See Bowen, 488 U.S. at
212 ("[W]e have declined to give deference to an agency counsel's
interpretation of a statute where the agency itself has
articulated no position on the question, on the ground that
'Congress has delegated to the administrative official and not to
appellate counsel the responsibility for elaborating and
enforcing statutory commands.'").

        USPS resists this conclusion, arguing that the
requisite authoritative agency interpretation that underlies its
litigation position can be found in regulations, issued under the
Postal Reorganization Act, that provide for formal proceedings -
by mailers - to challenge a USPS determinations of

nonmailability.  See 39 C.F.R. Parts 952-953. The argument is unpersuasive.  Those regulations do lay out a process for mailers to challenge mailability decisions that are adverse to them, but they do not by their terms exclude petitions by third parties to challenge mailability decisions, nor do they cover all the types of material that Congress has declared nonmailable, such as material that violates the Animal Welfare Act.  The fact that courts in this Circuit have had occasion to review only nonmailability decisions, see Aid Ass'n for Lutherans v. USPS, 321 F.3d 1166 (D.C. Cir. 2003) (USPS's mailing rate determination was ultra vires); Aimes Publ'ns, Inc. v. USPS, No. 86-1434, 1988 WL 19618, at *7 n.10 (D.D.C. 1988) (reviewing USPS's mailability determination under the APA), proves only that, on this issue, the present case is one of first impression.  District courts in New York and Georgia have indeed considered cases by nonmailers challenging mailability determinations, see Howe v. The Reader's Digest Ass'n, Inc., 686 F. Supp. 461, 466 (S.D.N.Y. 1988) (plaintiffs did not want to receive certain material in the mail); Atlanta Coop. News Project v. USPS, 350 F. Supp. 234 (N.D. Ga. 1972) (plaintiffs specifically wanted the opportunity to receive a particular type of material in the mail that had been deemed nonmailable), failing to reach the merits in those cases only because the plaintiffs failed to establish sufficient injury-in-fact to support standing.

Not only is the USPS position unsupported by regulations and by case law, but it is undermined by the pre-litigation actions of USPS, which speak louder than its post-litigation words.  The Humane Society's petition was a formal request containing the factual background and legal analysis necessary to support its request that USPS declare *The Feathered Warrior* nonmailable material.  The petition - formatted as a legal pleading and prominently labeled a "petition" - was sent to the Postmaster General and CEO of USPS.  USPS's Manager of Mailing Standards responded to it within six weeks.  That response indicated that USPS had considered the petition, that it had performed legal analysis of the relevant statutory provisions, and that it had concluded that the Humane Society's requested action was not legally required.  The response did not state that USPS had no duty to respond to the petition, or that the Humane Society had contacted the wrong individual within USPS, or that there were no procedures for the submission of a third party petition seeking a mailability determination.  Nor did the response state that, as a nonmailer, the Humane Society was an improper entity to initiate a mailability determination.  Instead, USPS responded to the petition on its merits, and flatly denied the relief the Humane Society sought.

The USPS response did notify the Humane Society that the Secretary of Agriculture has broader enforcement authority

under the Animal Welfare Act and that the Humane Society should contact the Department of Agriculture if it wished to seek a criminal investigation of suspected animal fighting activity. That buck-passing maneuver, however, neither stated nor implied that the Department of Agriculture had anything to do with *mailability* determinations (and, of course, it does not).

Again, when the Humane Society sought reconsideration of USPS decision after the Animal Welfare Act was amended in 2007, USPS made a merits determination that the amendment did not affect the mailability of *The Feathered Warrior* and delivered that  determination without stating or hinting that no "proceeding" had occurred or that the Humane Society had acted improperly or outside of official channels in petitioning for reconsideration.  The USPS letter thanked the Humane Society for bringing the new information to USPS's attention and invited the Society to "bring other authority to my attention," if "any further developments in this law should occur."

The USPS litigating position that its responses to the Humane Society's positions are not judicially reviewable because they were not the result of "proceedings" cannot be squared with its pre-litigation behavior.  "Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."  <u>Bowen</u>, 488 U.S. at 212; <u>see</u>

<u>American Bar Ass'n v. F.T.C.</u>, 430 F.3d 457, 471 (D.C. Cir. 2005)
(refusing to affirm agency action based on *post hoc* rationale).

## 3.  <u>Remand</u>

After the Humane Society initiated this lawsuit,
Congress amended § 2156 of the Animal Welfare Act yet again,
adding even more clarity to the type of animal fighting material
that must be treated as nonmailable.  USPS has not officially
considered this amendment with regard to its mailability
determination for *The Feathered Warrior*.  Thus, although the
Humane Society has standing to complain of the Postal Service's
rejection of its petition and its denial of its request for
reconsideration, and although those actions of the Postal Service
appear to have been final agency actions, judicially reviewable
under the Administrative Procedure Act, the changes in the
governing law counseled remand of the question of *The Feathered
Warrior's* mailability to USPS for further consideration.  <u>See</u>
<u>Panhandle Eastern Pipe Line Co. v. F.E.R.C.</u>, 890 F.2d 435, 438-39
(D.C. Cir. 1989).

James Robertson
United States District Judge